UNITED STATES COURT OF INTERNATIONAL TRADE

```
------------------------------------------------------------------ X
RAYMOND GEDDES & COMPANY INC.,         :
                                       :
        Plaintiff,                     :
                                       :
        v.                             :   Case No. 25-265
                                       :
UNITED STATES,                         :
                                       :
        Defendant.                     :
------------------------------------------------------------------ X
```

## COMPLAINT

Plaintiff Raymond Geddes & Company Inc., for its Complaint in this action, does hereby state and allege as follows:

## CAUSE OF ACTION

1. Plaintiff brings this action pursuant to Section 515 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1515, to challenge Customs' denial of Plaintiff's protest against the assessment of antidumping duties on its entries of cased pencils manufactured in, and imported from, the Philippines.

## JURISDICTION

2. This Court has exclusive subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1581(a).

3. All liquidated duties, taxes and fees were paid prior to the commencement of this action.

## PARTIES

4. Plaintiff Raymond Geddes & Company Inc. ("Raymond Geddes" or "Plaintiff") is a United States corporation headquartered in Baltimore, Maryland. Plaintiff was the importer of record of the merchandise which is the subject of this action, and paid the liquidated duties, taxes and fees. It is the real party in interest in this action.

5. Defendant United States is the Federal Defendant. The denial of Plaintiff's protest in this action was done by Defendant's agency U.S. Customs and Border Protection ("Customs" or "CBP"), a unit of the U.S. Department of Homeland Security.

## STATEMENT OF FACTS

6. The merchandise which is the subject of this action consists of certain cased pencils manufactured in, and imported from, the Philippines.

7. The manufacture of cased pencils begins with wooden slats, typically made of basswood or Lindenwood. These slats are milled to create grooves for the placement of the writing "cores." Once milled, the slats are referred to as "casings."

8. Writing cores are produced from graphite powder mixed with clay. Additional gums and clays are incorporated to strengthen the core, and waxes and oils are added to promote smooth writing performance and proper adhesion of the core material to paper.

9. The cores are placed into the milled grooves of the bottom slat, and a top slat is then glued to it, forming a bonded pencil "sandwich."

10. The bonded slat is run through a milling machine that removes material around each core, separating the individual pencils. Depending on the tooling used, the exterior shape of the pencil will be either circular or hexagonal.

11. Some manufacturers apply decorative or protective finishes by coating the pencils with a lacquer. This lacquer is commonly applied by pushing the bare pencil through a circular ring brush.

12. Pencil lacquers are carefully formulated to be free of lead, heavy metals, and other toxic substances. They must comply with the lead standards promulgated by the Arts and Creative Materials Institute ("ACMI"), which are incorporated in the Labeling of Hazardous Art

Materials Act ("LHAMA"), 15 U.S.C. § 1228. To ensure rapid drying—pencil lacquers dry in the time it takes the pencil to exit the brush and fall 1-or- 2 feet to a collection box—lacquers contain substantial quantities of the explosive substance nitrocellulose, an explosive compound. Consequently, pencil factories must be well-ventilated, and open flames are strictly prohibited.

13. Some manufacturers also affix gum erasers to pencils using a metal ferrule.

14. Certain companies produce "novelty" pencils by wrapping the pencil body in a plastic film printed with messages or advertising. Plaintiff Raymond Geddes imports this type of pencil from the Philippines.

15. All of the manufacturing operations described in paragraphs 7 through 14 were performed in the Republic of the Philippines.

16. The pencils at issue were manufactured in the Philippines using wooden slats of Serbian-origin and writing cores of Philippine-origin. The glue and lacquer used in production of the subject merchandise are also of Philippine-origin.

17. The only components of Chinese origin are the optional ferrules, erasers, and foil wraps used with novelty pencils. Collectively, these components account for only a small percentage of the total material cost. All manufacturing operations for all pencils, however, are performed in the Philippines.

18. Despite these facts, Customs liquidated the pencils with antidumping duties at the rate of 114.9% *ad valorem,* as though they were produced in China and subject to the antidumping duty order on *Cased Pencils from the People's Republic of China*. *See Antidumping Duty Order: Certain Cased Pencils from the People's Republic of China,* 59 Fed. Reg. 66,909 (Dep't of Commerce, 1994) ("Order"); and *Certain Cased Pencils From the People's*

*Republic of China: Continuation of Antidumping Duty Order*, 88 Fed. Reg. 15,673 (Dep't of Commerce, 2023).

19. The "Antidumping Third-Party Case Number" A-565-827-000 stems from a company-specific scope ruling issued by the U.S. Department of Commerce concerning certain pencils manufactured in the Philippines and imported by School Specialty Inc. ("School Specialty"). In a scope ruling dated May 6, 2024, Commerce determined that School Specialty's pencils were subject to the antidumping duty order on *Cased Pencils from the People's Republic of China*. A copy of the scope determination is appended as Complaint Exhibit 1.

20. As reflected in the scope ruling—which concerned only School Specialty's imports and was based solely on the administrative record concerning School Specialty's products—the pencils imported by School Specialty were manufactured in the Philippines using nearly all Chinese-origin materials. Applying the "substantial transformation" criteria set forth in Commerce's regulations, 19 C.F.R. § 351.225(j), Commerce determined that the operations performed in the Philippines did not substantially transform the Chinese materials, and therefore held that School Specialty pencils retained Chinese origin for purposes of the antidumping order on *Cased Pencils from the People's Republic of China*. *See* Complaint Exhibit 1.

21. Commerce thereafter created Antidumping Third-Party Case Number A-565-827-000 exclusively for reporting imports of Philippine-made pencils produced for School Specialty and found to be within the scope of the order. Commerce never analyzed Raymond Geddes' Philippine pencil-manufacturing operations, never sought or reviewed any data concerning those operations, never sought data regarding those operations, and never issued any scope ruling concerning the Raymond Geddes' pencils, or the pencils of any other producer or importer other than School Specialty.

22. Commerce's memorandum of June 12, 2024 announced the creation of case number A-565-827-000 and expressly stated that the number was created as a result of the scope inquiry regarding School Specialty's pencils:

   > As a result of the scope ruling, Commerce found that products covered by the ruling assembled by School Specialty in the Philippines using Chinese imported inputs and exported from the Philippines to the United States should be properly reported as subject to the order on certain cased pencils from the People's Republic of China (A 565-827) upon entry.

   *See* Complaint Exhibit 2.

23. Customs' field message 4166410, dated June 14, 2024 (Complaint Exhibit 3) summarized Commerce's limited finding regarding School Specialty but incorrectly suggested that the third-party antidumping case number applied to any pencils manufactured in the Philippines using Chinese inputs:

   > Imported products (i.e., #2 pencils, drawing pencils, and colored pencils) are manufactured in the Philippines with inputs imported from China Commerce found that they have a Chinese country of origin, Commerce found these products to be within the scope of the order.

24. On information and belief, Customs relied on field message 4166410 when assessing antidumping duties on Plaintiff's imported Philippine-made pencils at liquidation.

25. Raymond Geddes timely protested the assessment of antidumping duties, explaining that Commerce's scope ruling was limited to School Specialty's pencils and that the Philippine case number applied solely to that company's imports. After Customs denied the protest, Plaintiff commenced this action.

## COUNT I

26. Paragraphs 1 through 25 are incorporated by reference as though fully set forth herein.

27. CBP denied Raymond Geddes' protest, stating:

> [T]he pencils do fall within the scope for the Philippines case. DOC did confirm through an inquiry response that any component of Chinese origin, no matter what the component is and no matter how much of the pencil it makes up, makes the pencils subject to the case. The Director of ADCD at Office of Trade confirmed that Scope ruling (4165409) specifying certain importers/exporters are not interchangeable. Also note ruling N333392.

*See* Complaint Exhibit 4.

28. Commerce's regulations governing scope determinations require the agency first to examine the terms of the antidumping duty order itself. 19 C.F.R. § 351.225(k)(1). Only if the language of the order is ambiguous may the additional factors set out in 19 C.F.R. § 351.225(k)(2) be considered.

29. Antidumping Third-Party Case No. A-565-827-000 was created as a result of a company-specific scope ruling and is limited to pencils manufactured in the Philippines and imported by School Specialty. *See* Complaint Exhibit 1.

30. The case number referenced in Commerce's memorandum of June 12, 2024 applies exclusively to the School Specialty pencils addressed in the May 6, 2024 scope ruling. *See* Complaint Exhibit 2.

31. The field message 4166410, dated June 14, 2024, inaccurately indicated that any pencils manufactured in the Philippines containing Chinese-origin materials were subject to the antidumping duty order on *Cased Pencils from the People's Republic of China*. *See* Complaint Exhibit 3. This erroneous communication appears to have caused confusion among CBP field offices regarding the proper application of the order.

32. Raymond Geddes's pencils are not subject to the antidumping orders because Commerce's scope ruling applies only to School Specialty's pencils and to no other importer or manufacturer.

33. Raymond Gesses's pencils are products of the Philippines and therefore are not subject to the antidumping duty order applicable to Chinese-origin cased pencils. *See* Complaint Exhibit 1.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court:

a) enter judgment in Plaintiff's favor;

b) order the appropriate Customs officer to reliquidate the subject entries of Philippine-origin pencils free of antidumping duties;

c) order Customs to refund to plaintiff all excess duties, taxes, and fees paid, together with interest as provided by law; and grant Plaintiff such other and further relief as the Court may deem just and appropriate.

Respectfully submitted,

/s/ John M. Peterson
John M. Peterson
Richard F. O'Neill
Patrick B. Klein
Sanzida Talukder
NEVILLE PETERSON LLP
*Counsel for Plaintiff*
One Exchange Plaza
55 Broadway, Suite 2602
New York, NY 10006
(212) 635-2730
jpeterson@npwny.com

Dated: November 14, 2025